UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

NELSON D.O.E.,

        Petitioner,

    v.

WARDEN; et al.,

        Respondents.

No. 2:26-cv-01107-TLN-AC

A # 221-461-140

**ORDER**

This matter is before the Court on Petitioner Nelson D.O.E.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1) and Motion for Temporary Restraining Order ("TRO") (ECF No. 2).  On March 26, 2026, the Court ordered Respondents to respond to Petitioner's Motion for TRO.  (ECF No. 4.)  On March 28, 2026, Respondents filed a consolidated Response to Petition for Writ of Habeas Corpus, Opposition to Preliminary Injunction, and Opposition to TRO.  (ECF No. 6.)  For the reasons set forth below, Petitioner's habeas petition is GRANTED.  (ECF No. 1.) Petitioner's Motion for TRO is DENIED as moot.  (ECF No. 2.)

///

---

[1]    As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information.  *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a noncitizen who entered the United States in or around 2004.  (ECF No. 6-2.)  He is married to a United States citizen.  (ECF No. 1 at 4.)  Petitioner has no criminal record, and he maintains that he is not a danger to the community or a flight risk.  (*Id.* at 5.)

Petitioner is currently in the process of obtaining lawful permanent resident status.  (*Id.* at 4–5.)  On December 30, 2020, U.S. Citizenship and Immigration Services ("USCIS") granted the Form I-130: Petition for Alien Relative, submitted by Petitioner's spouse on his behalf.  (ECF No. 6-1.)  On January 21, 2026,[2] USCIS granted Petitioner's Form I-601: Unlawful Presence Waiver, signifying USCIS's determination that Petitioner's United States citizen spouse would suffer extreme hardship upon his removal.  (ECF No. 1 at 5, 10.)  Following these approvals, Petitioner's case was forwarded to the U.S. Department of State for visa processing on January 21, 2026.  (*Id.* at 20.)  To obtain lawful permanent resident status, Petitioner must depart from the United States to proceed with his consular process.  (ECF No. 6 at 2–3.)  On March 17, 2026, Petitioner filed a motion for voluntary departure with the immigration court.  (ECF No. 6-3.)  The motion remains pending.  (ECF No. 6 at 3.)

On January 4, 2026, Petitioner was detained by immigration authorities in San Juan, Puerto Rico.  (ECF No. 6-2 at 7.)  According to the Government's documents, immigration authorities encountered Petitioner, and "[a]fter determining that [Petitioner] was a[ ] [noncitizen] who illegally entered the United States, [Petitioner] was issued on scene an I-200 form, a Warrant for arrest of [noncitizen].  [Petitioner] was arrested on a public area and transported to the ICE San Patricio office for further processing."  (*Id.*)  Petitioner was eventually transported to the California City Correctional Center.  (ECF No. 1 at 5.)

On March 25, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and Motion for TRO.  (ECF Nos. 1–2.)  Petitioner challenges the lawfulness of his civil detention and seeks immediate release.  (ECF No. 1 at 7–9.)

///

---

[2]    Respondents state Petitioner's Form I-601 was approved on January 20, 2026.  (ECF No. 6 at 2.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    ANALYSIS

Petitioner claims his detention violates the Immigration and Nationality Act ("INA") and Fifth Amendment Due Process Clause.  (ECF No. 1 at 8–7.)  In opposition, Respondents contend Petitioner is an "applicant for admission," subject to the mandatory detention scheme of 8 U.S.C. § 1225(b)(2)(A) ("§ 1225(b)(2)").  (ECF No. 6 at 2–4.)

### A.    Immigration and Nationality Act

Section 1226(a) of the INA "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  The statute affords the Government broad discretion whether to release or detain the individual. *Id.*  It also provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202.  Conversely, § 1225(b)(2) mandates detention during removal proceedings for "applicants for admission" who are "seeking admission" and does not provide for a bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).  Until the U.S. Department of

Homeland Security changed its policy in July 2025, the Government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.

The Court is not persuaded by Respondents' assertion that Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2). (ECF No. 6 at 2–4.)  Courts throughout the Ninth Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2). *See e.g.*, *Hortua v. Chestnut, et al.*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 at *3 (E.D. Cal. Dec. 9, 2025); *Armando Modesto Estrada-Samayoa v. Orestes Cruz, et al.*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).

Respondents put forth no new arguments or facts justifying reconsideration in this case. Respondents' citation to the Fifth Circuit decision in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) is unpersuasive as it is not controlling on this Court and its reasoning has been squarely rejected by courts across the Ninth Circuit.  *See Wasef v. Chestnut*, No. 1:26-CV-01078-DAD-JDP (HC), 2026 WL 392389, at *1 (E.D. Cal. Feb. 12, 2026) (collecting cases).

Thus, for the aforementioned reasons and consistent with this Court's numerous prior rulings, the Court finds Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2).  Petitioner's detention is instead governed by § 1226(a) and he is entitled to the process so required including, at a minimum, a bond hearing.  Having been denied this

4

process, Petitioner's detention violates § 1226(a) of the INA.

B.    Fifth Amendment Due Process Clause

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693.  These due process rights extend to immigration proceedings, including detention and deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

i.    Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)).  "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause."  *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182 (D. Haw. 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Morrissey*, 408 U.S. at 481–82).  An individual's liberty interest may be strengthened over time.  *See*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions allowing petitioner to remain in the community for over five years strengthened their liberty interest).

Petitioner has a clear liberty interest.  He has resided in the United States for approximately twenty-two years, is married to a United States citizen, and is currently in the process of obtaining lawful permanent resident status.  Even if he is subject to removal or his

5

freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause. *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693.

Petitioner therefore has a liberty interest protected by the Due Process Clause.

### ii.    Process Required

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, these factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private interest in remaining free from detention. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe*, 787 F. Supp. 3d at 1094. Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976. As Petitioner maintains he has no criminal history, is not a flight risk, and has established ties to the United States including his United States citizen spouse, the risk that he is being detained without proper justification is exceedingly high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the government's interest in detaining Petitioner without notice and a pre-

deprivation hearing is low.  The effort and cost required to provide Petitioner procedural safeguards are minimal.  *See Doe*, 787 F. Supp. 3d at 1094.  Notice and custody determination hearings are routine processes for Respondents and are indeed the very processes required under § 1226(a).  Any burden associated with the provision of these processes does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to notice and a hearing before a neutral arbitrator prior to detention.  He received neither.  His detention therefore violates due process.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus.[3] (ECF No. 1.)  IT IS HEREBY ORDERED:

1.    Respondents must IMMEDIATELY RELEASE Petitioner from custody under the same conditions he was released prior to his current detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").  At the time of release, Respondents must return all of Petitioner's documents and possessions.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  **Respondents must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

2.    Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing

---

[3]    The Court rejects Respondents' request to hold this matter in abeyance pending the outcome of various appeals pending resolution before the Ninth Circuit. (ECF No. 6 at 4–5.)  The Court will not delay issuing relief on the prospective chance that a pending appeal could change the outcome of one claim.

evidence that the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention.  *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

       3.      Petitioner's Motion for TRO is DENIED as moot.  (ECF No. 2.)

       4.      The Clerk of Court is directed to serve California City Detention Facility with a copy of this Order.

       5.      The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

       IT IS SO ORDERED.

Date: April 6, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE